The case up is 25-60335 Vasquez-Barrera v. Blanche. Mr. Levy, you ready? Good afternoon and may it please the court. Jonathan Levy with American Gateways for the petitioner Jose Obed Vasquez-Barrera. What's in a name that which we call a rose by any other name would smell as sweet. The Salvadoran government chose the name terroristic organizations to refer to petitioner's crime of conviction. But that does not change the fact that the crime is so intentionally vague that it could be used to prosecute a group of teenagers making prank calls. Indeed, the department, despite carrying the initial burden to show probable cause to believe both the commission of a crime and, separately, the serious nature of that crime, offered nothing and points to nothing in the record other than the name to suggest that whatever petitioner did, if anything at all, was serious for purposes of the bar. On the other hand, the Salvadoran government itself indicated that it did not believe the alleged conduct to be serious because they released petitioner right back into society. No jail time. The court should, therefore, reverse the agency's application of the serious nonpolitical crime bar. Even if the court does not agree with me on this point, remand is nonetheless required because the board did not even consider the seriousness of the petitioner's alleged conduct. The board's analysis on page 11 was solely about the commission of the crime or of a crime and not its nature. Now, next, I'd like to address the missing 25-page criminal document, which the Department of Justice claims prevents the petitioner from meeting his burden. Before you move on to that, did the brief that you filed with our court challenge the political nature? Yes, at pages 34 to 35, it was challenged in the brief with this court and at pages 52 and 53 of the record for challenging that for the Board of Immigration Appeals. So regarding the 25-page criminal document, the department claims that this prevents the petitioner from meeting his burden on the serious nonpolitical crime bar. Firstly, the Department of Homeland Security had the initial burden, and so one might fairly wonder, well, why didn't the department get this document? After all, the court can see on pages 202 and 203 of the record that the department knew about three months before the final hearing that the petitioner had a conviction. Nevertheless, substantial evidence does not support the conclusion that the 25-page document was reasonably available. Here, the immigration judge gave only one reason to suggest that it was reasonably available, and it was premised on a mistake of fact. The judge said that because the petitioner used one document, the summary of the sentence, that, well, where were the other 24 pages of the same document? But it was not the same document, and the court can see this on page 885 of the record. It was a different document, and there is nothing in the record to indicate that that document was publicly available or obtainable in any way. In fact, the only evidence in the record that goes to this question suggests that it was not, and that came when the judge asked the petitioner about the existence of an arrest warrant. Now, this is a separate item of corroborating evidence that the judge found missing, but this is the only item that the judge actually requested an explanation on. It's the existence of the arrest warrant, and the petitioner's explanation was, at page 363, quote, my family has done everything possible to provide that document, but it has not been given to them, presumably by the Salvadoran government itself. So, all the evidence points to the fact that this 25-page document would, was not reasonably available to the petitioner. The, I've addressed that document and the arrest warrant. There was a third document that the judge, immigration judge said should have been provided that was not, and that was a letter from the attorney. Like with the 25-page document. What was, let me ask you, what was his principal defense, you know, back at the IJ level? I mean, what was his principal argument or thrust before the IJ? The argument was, well, a couple, because we have to differentiate between asylum and protection under the Convention against Torture. Regarding asylum is that there is a reasonable possibility of future persecution on the basis of his membership in the LGBT community as a bisexual man. And with regarding to Convention against Torture, there, his membership in any group doesn't matter because there's no requirement of nexus to a protected ground. There it's all about the likelihood that he will be tortured if removed to El Salvador. Now, regarding corroboration, that along with the serious non-political crime bar were applied as bars to his asylum claim. And with the attorney letter, like with the 25-page document, the immigration judge gave no reason whatsoever to suggest that a letter from his criminal attorney in El Salvador was reasonably available. In fact, the evidence in the record shows that it was not. Evidence such as the fact that he had minimal contact with his attorney, that his attorney is not named anywhere in the record, that the final hearing took place about seven years after the last contact, according to the record, with his criminal attorney. And crucially, evidence in the record at pages 1279 and 1322 show that human rights defenders, including attorneys, are targeted under the current state of exception. So going to this attorney, which again, seven years prior, was not a reasonable option, not for the petitioner and not for the attorney. I do want to point out that if the court agrees on some of these documents I've just discussed, but not all, nonetheless, remand is appropriate under matter of LAC at 29 INN DEC 516. In that case, the board noted that the corroboration test was a totality test and it's stressed that the agency must not place undue weight on any one item of corroboration without considering the full record and what was corroborated. Now, speaking of that, the immigration judge's other error regarding corroboration of the asylum claim was that the judge said that, excuse me, the judge faulted the witness letters for omitting some details that each declarant did not witness. This was an illogical application of the corroboration rule that put the petitioner in a catch-22. Why? Because under Monomanong v. Garland at 59F4212, this court affirmed the finding that a witness who was not present at the event can't corroborate. The court said, quote, there was no primary source evidence. And so the judge faulted these letters for not including the very thing that this court has affirmed to say that it was basically useless, which is, and of course this makes perfect sense. Witnesses declaring things that they were not there to see, that could put the petitioner in a position of diminishing the weight of those witness letters or even just finding them not credible. Now, I've described errors such as the illogical application of the corroboration rule and basing a ruling on corroboration on a mistake of fact. Those errors are also relevant for the question of bias by the immigration judge. Now, there are many examples, too many examples in the record to discuss in the time that we have today. The broad point I want to make about bias is that it is not possible to read through the transcripts for the October 1st and October 10th, 2024 hearings like a two-act play without recognizing the immigration judge, not the ICE attorney, but the immigration judge as the lead antagonist. And I would like to give what I believe are my top three examples of where the court can see bias in the record. First, at pages 278 and 279, number one, the immigration judge commandeered direct testimony. So far, it's okay. That's not uncommon. Number two, the immigration judge misstated the record regarding whether there were prior inconsistent statements about officers other than the one named Gutierrez harming the petitioner. Number three, and here's where we enter into the problem, when counsel tried to inform the immigration judge of the demonstrable error and tried to explain it, the immigration judge called it argument, didn't permit it, and obligated counsel to move on. Number four, the immigration judge then cited that exchange with the petitioner in her negative credibility finding, and that can be seen at page 113 of the record, part of the immigration judge's decision. The second example of bias I want to highlight is at pages, well, comparing. First, pages 290 and 291. Here, when petitioner's counsel dared express a desire to schedule the continued hearing, going from October 1st to October 10th, the continued hearing for a date when the petitioner's witnesses could attend, these were the proffered expert witnesses, the immigration judge said, they're going to show up when it's the court's availability, their witnesses, and then you're going to get another date and it's going to be when the court's available, all right? Let's compare that to pages 326 and 327. Here, the immigration judge learned that the ICE attorney would not be at the continued hearing because she was rescheduled for another hearing, but the ICE attorney informed the judge that she would apprise the next attorney of everything that had passed at the October 1st hearing. The judge's response was, quote, it's just kind of unusual for the ICE attorney to switch in the middle of a case, and so if I need to give you a different date, I'm more than happy to do that. I wonder where was that courtesy for petitioner's counsel? The third example, the third example I wish to highlight is the immigration judge prejudging the value of testimony in support of petitioner, and you may find this at pages 293 and 294. Here referring to the proffered expert witnesses, the judge said, quote, I do this full time for a living. You're going to sit here and have two PhDs tell me what the country conditions are in El Salvador after you filed 600 pages of documents for the second merits? Do you really think that's necessary? Do I need someone to sit here and tell me about country conditions in El Salvador? No. Now, I acknowledge, as Mr. Hubinks pointed out in his brief, that yes, the petitioner did file 600 pages of country conditions, but you don't have to take my word for why the judge's response to that is wildly inappropriate. This is from the board itself in matter of JGT at 28 INM deck 97. A key purpose of qualifying a witness as an expert is to provide a framework for the immigration judge to evaluate the evidence, expert testimony in immigration court is relevant if it will help the immigration judge understand the evidence or decide a fact and issue, close quote. And this is my own addition here that also an expert can help apply the evidence, the applicant's circumstances, and base the analysis on the expert's own research. In short, as this court stated in LEAF logistics Inc. at 876F2409, quote, the purpose of expert testimony is to guide the jury. In this case, the agency or the judge. But here the immigration judge betrayed prejudgment that the witnesses would be helpful in precisely none of those respects. Why? Well, the only reason is that finding them potentially helpful would be equivalent to being open to allowing their testimony to possibly guide the judge toward an outcome that she did not desire. And that's the ultimate point, is that this case was headed towards only one outcome prior to testimony. At bottom, the immigration judge was in ICE's corner and viewed things like defense attorneys and expert witnesses as annoyances, standing between her champion and a swift deportation You realize that's a pretty strong accusation, right? I do, Your Honor. And I do understand that the standard of proof is a difficult one. It's from Wong Beholder. It's, quote, deep-seated favoritism or antagonism that would make fair judgment impossible. That's as an alternative to, say, some kind of smoking gun evidence, which is not present in this case. Yeah, I'm going to leave whatever else is in the case. I would just say it's a slippery slope at best to try to get the home plate based on arguing bias by, you know, the initial finding, whether it's there or not, but asking a panel to get to that. I mean, if there's evidence that supports the claim, that's one thing. But, you know, it's just a strong, I mean, it's your argument you're making. But I'm just saying, in general, that's not a winning argument to try to persuade us that the judge was in the corner of the other side. I mean, that's just strong. I mean, you know, by my lights, if you can prevail, you might. But I don't know that you'd get there on that one without something stronger than just you saying it. I understand that, Your Honor. And for that, I do rely on the briefing on this issue and also on those first three examples. It's the primary examples of bias. I would also point the court to Serrano Alberto, the Attorney General of the United States. This is out of the Third Circuit at 859 F3rd 208. Looking away from your script, I mean, what's the argument you want to make? I mean, you've spent most of the time telling us what's in the record, what the adj was biased, et cetera, et cetera, et cetera, et cetera. I mean, you know, just looking straight up here, not at the script, you know, what's the most convincing argument you can make, you know, to get relief in part or in whole on some of these claims? We read the briefs, so you're reading them back to us just isn't helpful, at least for this judge. And I mean, it's your argument. But I mean, if you're seriously trying to get relief on one of these points, I'd say in the two minutes you've got left, go for the juggle as to what those are. Understood, Your Honor. Thank you. And no, I will rest on the briefs for the bias issue. But regardless of the bias issue, even if the court disagrees with me on that, that the court should nonetheless remand the asylum case based on reversing a serious nonpolitical crime issue and on corroboration. In my remaining time, I would like to address the likelihood of future torture. And here, the main point I want to make here is that petitioner identifies two errors. Both of them are legal errors subject to de novo review. So this is not about whether the substantial evidence supports a finding of that there is no likelihood of future torture. It is the legal error in how the evidence was considered. First, the agency discounted country conditions by mislabeling it as general. The BIA mischaracterized evidence as general. They ignored evidence of systemic and intentional torture. The BIA ignored individualized evidence of risks such as the letters from the witnesses and also four declarations about continued surveillance by police and or the petitioner's father. Of course, this brings us back to the corroboration issue. But if the court agrees with me on corroboration, then there must be a remand on torture as well under Aguilar-Quintanilla v. McHenry at 126 F. 4th 1065, which is precisely about this issue there. This court remanded for failure to consider witness affidavits that was also in a state of exception case in El Salvador and the witness affidavit spoke to the Salvadoran government's continued interest in the petitioner. The board did not consider it, so it got sent back. Likewise here, should the court agree that reversal is merited on the corroboration issue, then the torture issue must be remanded as well under Aguilar-Quintanilla v. McHenry. Thank you. All right, you've reserved your rebuttal time. All right, we'll hear from the government. Thank you, Your Honors, and may it please the court. Zachary Hubanks on behalf of the respondent, the Attorney General. This petition for review should be denied because despite having a 2,000-plus page record, hundreds of pages of briefing, this case is ultimately about the burden of proof and the standard review. And here, petitioner has not met his burden of demonstrating that there are not serious reasons to believe he committed a serious nonpolitical crime in El Salvador, which is dispositive of the asylum and withholding of removal claims. Second, petitioner has not demonstrated evidence compelling the conclusion that he's likely to be tortured with the requisite state action in El Salvador. And third, petitioner has not demonstrated a due process violation or that the agency abused its discretion with his myriad of arguments. Well, unravel the nonpolitical crime piece. Just elaborate on that part. Yes, Your Honor, happy to. So the statute makes clear that an alien cannot be granted asylum or withholding of removal if there are serious reasons to believe that he has committed a serious nonpolitical crime. So the regulations create this framework of burden shifting with the understanding that this will not be an issue in presumably the vast majority of cases. So if there is evidence that demonstrates that there are quote-unquote serious reasons that this bar may apply, the alien has the burden of demonstrating that the bar does not apply. Here, petitioner's conviction in El Salvador, which he received a three-year suspended sentence and three years probation, is more than sufficient to demonstrate what the agency has clarified to be a probable cause standard. Petitioner does not contest that it's a probable cause standard. And so at that point, petitioner bore the burden of presenting evidence demonstrating that either he did not commit the crime in question or that it was insufficiently serious. Petitioner failed to meet that burden, Your Honor. So is he proving a negative? He's not proving a negative, Your Honor. Because if he has the conviction, you're saying that's there, right? So if he has the conviction, are you saying that's kind of step one? He's got to prove somehow that the conviction was whatever, vacated or not there. I guess what I'm asking is the fact of the conviction itself in your mind, he can't prevail? His existence of the conviction, I guess what I'm saying, the sine qua non of what the statute requires, or must there be more? In this particular case, I think it is the conviction. And what I was going to say, back to proving a negative, I'm not saying that there are zero cases out there where an alien could not demonstrate that a conviction was not enough. But if we look at the application of this bar across the various circuit courts of appeals, often there is significantly less evidence than a conviction. It'll be an arrest warrant, an Interpol red notice, combined, say, with the alien's incredible testimony or something, that that's enough to place the onus on the alien to demonstrate, no, this bar does not apply. And so in this specific case, that is the issue. Again, perhaps there's the road a petitioner could have proven by a confidence of evidence that this crime was insufficiently serious or with sufficiently persuasive testimony that, no, he did not commit this crime and that there was some kind of error here. Would he have to show both that it wasn't serious and that it was not political? Because I looked at the pages that counsel on the other side cited in response to my question about whether or not he challenged the political nature of the crime. And it talks a lot about whether the crime was serious or not serious. I don't see a whole lot about whether or not it's political. Do you need to prove both of those? Or as long as it's serious, is that sufficient? So the initial burden would need to demonstrate both seriousness and its non-political nature and then the reverse of being able to demonstrate one or the other would be sufficient, Your Honor. Just to clarify, I did not read the petitioner's brief as challenging the political nature of that. And I think viewing them as somewhat separate is important because it doesn't allow a foreign state to punish, say, various forms of dissident speech that we value obviously in this country with a hefty sentence and claim, well, that person's not a refugee because they were convicted of this serious crime. And so that's why the word political is there. And it goes back to McMullen cases out of the 80s and 90s. And he was a member of, I believe, the Provisional Irish Republican Army. And then this court's case in F.A. v. Ashcroft from 2002 discussed the political aspects. I don't believe that's an issue in this case. The petitioner hasn't argued that the alleged or the crime he was convicted of is political, taking it out of the application of the bar, Your Honor. Counsel, in considering the documents, the missing documents relative to the conviction, if there are 25 pages, and as I understand it, we only have one or two, is there a case that we can look at that gives us some direction or guidance on what to make of that? I mean, it sounds a little bit like a spoliation-type argument, although neither one of you have talked about that, and it's probably not the proper concept. But it's somewhat akin to it that it's missing. And so is there a presumption, or is there a case that says there's a presumption or that we should look with disfavor on the petitioner? Well, Your Honor, I think that goes back to what I was saying initially about this burden-shifting framework, and that once this evidence is there, and again, as a probable cause standard, a reasonable adjudicator can say, I have reason to believe you committed a crime, and with this sentence it seems serious. So then it goes back to, by not having it, it's petitioner's burden. And maybe it doesn't have to be this specific document, but the petitioner had to present evidence to effectively rebut the presumption that the bar did apply once this evidence came into play. And as I just said, any reasonable adjudicator would effectively scratch their head and say, that seems like a crime I need to know more about, and there's this reference document that I don't have that appears, will shine some lights on at least what the Salvadoran courts were going off of and what happened. Well, this is really an odd circumstance in the sense that we have one or two pages of it. Usually if it's missing, it's missing. In this case, we have one or two pages of it, and we're missing the balance of the 25 pages. So I was just hoping maybe there was something that, a case or something, where something similar might have happened that might help us on how we should consider that. I understand, Your Honor. I'm not aware of a case in this circuit or any circuit that's directly on point to your question, and I do take your question. I think that's why what it really just ultimately is going to go back to is evidence, and what did the parties submit? And here, this document was submitted. It references the 25 page, I believe it's called a sentence conviction. They describe it as 25 useful pages, and based off the procedural posture of the case, the ambiguities and the gaps harmed Petitioner, because he was the one who needed to prove there were not serious reasons to believe he committed a serious non-political crime, Your Honor. What is the best case that shows that the harm that Petitioner experienced did not rise to the severity of torture? I'd have to rack my head, Your Honor. I apologize, not having a case on hand. But I think this court has recognized, in case after case, how severe actions have to be to be tortured. It is a higher standard than persecution, and the regulations bear out this very specific type of serious inhuman conduct, Your Honor. And I would just add on that point that even assuming Petitioner could demonstrate past torture, torture convention protection is separate from asylum and withholding in that demonstrating past torture does not create a presumption of future eligibility for this protection from removal, unlike asylum and withholding, where if an individual demonstrates past persecution, they gain the benefit of a presumption that such persecution would happen in the future, Your Honor. If there are no additional questions from this court, I think I'm done. Let me just ask you, you understand, not you personally, but the torture claim to be based on the affiliation or alleged affiliation with the Salvadoran gangs, or whatever the respect to his sexual preferences or all that wrapped up into one. You see what I'm asking? I mean, is the torture claim spinning out from alleged connection with the Salvadoran government gangs, et cetera, et cetera, and these other matters are just somewhat, not unimportant, but collateral to that claim? Or is his concerns about his sexuality intertwined in the concern about torture? I may not be asking it right, but I think you understand. I think I understand, Your Honor, and I'll do my best to answer. Especially when I read Petitioner's opening brief, I read the two issues of the allegation that he will be detained largely based off the criminal conviction, and then the sexuality claim kind of zippers into that, and that increases his risk of harm, and not to make Petitioner's argument for him, but I almost read that as a way to potentially differentiate this court's case and Fuentes-Pineda, which came out in January and then was withdrawn and replaced in March about a similar El Salvador state of exception claim. That's how I read it. I do believe perhaps Petitioner could make a separate argument, essentially a what if he was not detained argument based off his sexuality. I'm not sure how fully addressed that is in the opening brief, Your Honor, but I'm happy to address that if you'd like to. Well, and that's kind of, you've done a better job at unpacking it than I asked it, but that's the way I was trying to see whether the argument beyond all the bias stuff was, has an extra layer of concern about the person. One, the connexity to the Salvadoran, if that's true, plus this other in trying to say his uniquely fits into a category to where these other cases wouldn't bar him and that that's the piece of it that the IJ, you know, didn't look seriously at for reasons he's mentioned and otherwise, but that, you know, we should drill down and I'm not asking you to, you know, to make his own, but as I said, just trying to sift through and, you know, kind of do the rifle shot on, okay, at bottom here, what is his claim about torture? Is it connexity to the Salvadoran game or is it the notion that because of the combined factor in that, I didn't find any cases, you know, anywhere where it's kind of sliced that thin and of course, that's the valuable argument that you all know the cases better than we do, so, but anyway, and when counsel, I mean, he can kind of address that, but I mean, that's just trying to get a grip of whether it fits within the many, many cases that we do have or whether it's sort of a nuanced case with, you know, different circumstances that somehow the BIA or the IJ may have missed because of this or that, that's all. Thank you, and I do think the agency decisions do thoroughly cover various permutations of what petitioner's claim might be. I mean, the immigration judge's decision is quite long addressing various theories of torture and then the board's affirmance really does kind of gleaned it all together and however petitioner is assessing if it's one detention based claim or multiple claims and I would just add, your honor, we have a string of briefs of other similar Salvadoran detention claims often with certain factors, I'm sorry, your honor. Well, I'm not at all saying what we're going to do because I don't know, that's But because I have you captive at the podium, aside from you disagreeing with it, at least in part, what would the downside to remanding this back down to clarify or deal with all these missing documents and so forth? Again, I'm not asking you to agree to that, I'm just, you do more of this than we do, so let's just try something, what's the downsides in time, would it go to a different panel or whatever? Again, I'm not presaging that, I just want to know the answer. Yes, your honor, I understand your question. The downside of remanding this case, well for one, I do think the agency decision is fully supported by substantial evidence and should be affirmed, and because of that, kind of as tailing off that, if we send it back to the agency, we've read their decision, we know what the decision's going to be, it's any error at this point Because they wouldn't be reading that to do a do-over, they'd be saying, Fifth Circuit, what part of what we said didn't you understand, right? Obviously I don't control the board, but I imagine their reaction would probably be somewhat similar to that So unless there's a remand with some instruction to do something different, the remanding in itself wouldn't necessarily mean redoing anything, am I right or wrong? Right? I mean just a remand without some instruction, do this, do that, I mean it's just back in the agency and reformulated and out, right? I'm not trying to posit that it would be a vain and useless act, that's not what I'm saying, but it's somewhat like if we remand to district courts, if we don't tell them specifically to do something when it goes down, there's a fair chance, you know, it'll sit there and then a decision will be made and that's not always clear that that's what the petition really wants, but I don't know, at least I didn't see any cases where even we've done that, you know, we've told an agency what to do I try to remember a specific case off the top of my head, Your Honor, I believe other courts have done similar things, but I do think in this case the agency decision is sufficiently clear and fully supported by substantial evidence and that any remand would effectively just turn into a ping pong game and a vain and useless formality of it'll be back here in a couple of years and the board decision will be functionally almost identical to what it is now. Okay. Thank you again, Your Honors, and if there are no further questions, the government would submit that the petition for review should be denied for the reasons stated in our answering brief. All right, thank you, sir. Thank you, Your Honor. Mr. Hubix is correct that there is no allegation of a political nature of whatever conduct allegedly happened, but there doesn't have to be because in this case the department didn't meet its initial burden with any evidence that elevates whatever alleged conduct may have happened above the serious threshold. There's, in fact, no evidence whatsoever. There's no allegation of any specific conduct. There's no lengthy jail sentence. In fact, there's no jail sentence at all. All there was is the name of the crime, but again, the evidence shows that this crime is so vague that that in and of itself, just the name, means nothing in terms of satisfying the department's initial burden on the seriousness of the crime. I heard you. Articulate for me on that point. What is the relief you're requesting? A remand on asylum. On that specific point, what we're requesting is a remand on asylum so that the board can address... Based on a holding of what? Based on, I'm sorry? Based on a holding by this panel of what? Based on a holding that the department, well, a couple things. One, that the department did not meet its initial burden on the nature of the alleged conduct being serious such that it triggers a serious nonpolitical crime bar, so we'd need a remand to address the seriousness of the crime. We also rely on the brief for a separate argument, which is that even if the department met its burden on the commission of a crime, that nonetheless the petitioner overcame that burden. Now, in this short time, I'll just rely on the brief for that. In addition, that substantial evidence does not support the agency's position on the corroboration issue. Those two combined require remand to the agency. On the corroboration issue, too, that should the court disagree with the petitioner on the 25-page document, nonetheless, it should take into account the fact that if the court agrees on the serious nonpolitical crime issue that the department did not meet its initial burden on the issue, that diminishes the importance of the 25-page document because, in fact, the department only raised arguments about corroboration in connection with the serious nonpolitical crime bar. Nowhere else in its brief is corroboration discussed. In my remaining seconds, I want to mention that to Your Honor's question about the likelihood of future torture, where is that coming from? Yes, his status as a bisexual man elevates this case above other similar cases. It's a higher risk, and the error here is that the board did not consider evidence specifically about LGBT people. Now, what's your case authority for that? I'm sorry, could you repeat the question? What's your case authority for that? What's my case for? Yeah, I mean, you heard my question to him, and you're now addressing it. Shirley, give him two minutes. You know, I was asking about this intertwined claim. You make it with ten seconds left on the clock, you know, on there. What I'm saying, I mean, you saying it doesn't make it so, and so what I'm saying is, I read it, we've all read it. One might infer that's kind of there, but that's not the way it's teed up, at least to my eyes. This is some kind of niche claim because of this duality piece here, and so to say remand back down below, I don't know. That's why I said, well, what's the case you have that says it? So the only case that I'm aware of that involves an intersection of the state of exception in El Salvador and the LGBT community is matter of AAFV, that's 29-I-9-DEC-118, and that's from the board, and all it says on the theme is, quote, while the immigration judge found that bisexual individuals in El Salvador may face human rights abuses, violence, and discrimination, the record fails to establish individualized risk of torture. Evidence of the general possibility of torture does not meet the applicant's burden, and that is precisely the same error as the board made in this case, characterizing the evidence as general, whereas, and I refer the court to the reply brief at page 12 and also the record at pages 1118 and 19, 1121, 1127, 1146. These are all areas where there was evidence specifically about people with the same characteristics as the petitioner. The agency did not consider that. And so the case is Aguilar-Quintanilla, then, v. McHenry. Now, different context, but nonetheless, what I'm asking for is remand for the failure to consider key evidence, in this case, evidence specifically about the LGBT community. I should also add that in AAFV, you know, I say that the agency made an error by characterizing the evidence as general. I'm not familiar with the record in that case. That's not available. So it might very well be that the record was different and deficient in that respect, but that's not this case, Your Honor. All right. Thank you. All right. Thank you, Mr. Levy, and thank you, Mr. Eubanks, for your briefing in particular for responding to the court's question. The case will be submitted. Thank you. All right.